IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ADWOWA JACOBS, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| ELECTRONIC DATA SYSTEMS | § | 2:05-CV-925-MHT-SRW |
| CORPORATION AND JEFF | § | |
| WILLIAMS, | § | |
| Defendants. | § | |

## ELECTRONIC DATA SYSTEMS CORPORATION'S
## MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

**Baker & Hostetler LLP**

Tonya A. Jacobs
State Bar No. 00790954
Fed. ID No. 18459
Rachel M. Smith
State Bar No. 24046483
Fed. ID No. 570875
1000 Louisiana, Suite 2000
Houston, Texas 77002-5009
Telephone:  (713) 751-1600
Telecopier:  (713) 751-1717

**Burr & Forman LLP**

Ashley H. Hattaway (HAT007)
Wachovia Tower
420 North Twentieth Street, Ste. 3100
Birmingham, Alabama 35203
Telephone:  (205) 458-5135
Telecopier:  (205) 458-5100

Attorneys for Defendant
Electronic Data Systems Corporation

## <u>TABLE OF CONTENTS</u>

PAGE

I.    PRELIMINARY STATEMENT ....................................................................1

II.   FACTUAL BACKGROUND ......................................................................2

III.  EDS IS ENTITLED TO SUMMARY JUDGMENT ON EACH OF
      PLAINTIFF'S CAUSE OF ACTION .............................................................6

 A.  There Is No Evidence To Support Plaintiff's Sexual Harassment Cause of
  Action Against EDS .........................................................................8

  1.  The alleged harassment was not severe or pervasive .................................8

  2.  There is no basis to hold EDS liable for the alleged harassment ...............10

   a.  Prior to February 10, 2005, EDS did not have actual or
    constructive notice of any alleged harassment by
    Mr. Williams. .................................................................10

   b.  Once Plaintiff reported the alleged harassment, EDS ...................11

 B.  There Is No Evidence That EDS Was Negligent In Hiring, Training Or
  Supervising Mr. Williams. .................................................................14

  1.  There is no evidence to support a finding of negligent hiring. .................14

  2.  There is no evidence to support a claim of negligent training or
   supervision. ................................................................................15

 C.  There Is No Evidence That EDS Was Wanton In Hiring, Training Or
  Supervising Mr. Williams. .................................................................16

 D.  There Is No Evidence To Support Plaintiff's Outrage Cause of Action ...............17

 E.  There Is No Evidence To Support Plaintiff's Cause of Action For Invasion
  of Privacy. .................................................................................19

V.    CONCLUSION ......................................................................................20

CERTIFICATE OF SERVICE ..........................................................................21

# TABLE OF AUTHORITIES

PAGE

**Federal Cases**

*Breda v. Wolf Camera & Video*, 222 F.3d 886 (11th Cir. 2000) .................................................. 10

*Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000) ......................................................... 9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................................... 7

*Coates v. Sundor Brands, Inc.*, 164 F.3d 1361 (11th Cir. 1999) ................................................ 11

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ............................................................. 8, 9

*Farley v. Am. Cast Iron. Pipe Co.*, 115 F.3d 1548 (11th Cir. 1997) ........................................... 13

*Goodstein v. Gunther Motor Co.*, 1996 WL 903950 (S.D. Fla. 1996) .................................. 13, 14

*Hulsey v. Pride Rest., L.L.C.*, 367 F.3d 1238 (11th Cir. 2004) .................................................... 8

*Kilgore v. Thompson & Brock Mgm't, Inc.*, 93 F.3d 752 (11th Cir. 1997) ........................... 12, 17

*Knabe v. Boury Corp.*, 114 F.3d 407 (3rd Cir. 1997) ................................................................ 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ................................... 7

*Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999) .......................................................... 9

*Meriweather v. Caraustar Packaging Co.*, 326 F.3d 990 (8th Cir. 2003) ................................... 9

*Miller v. Kenworth of Dothan*, 277 F.3d 1269 (11th Cir. 2002) ...................................... 8, 10, 11

*Mills v. Wex-Tex Indust., Inc.,* 991 F.Supp. 1370 (M.D. Ala. 1997) ................................ 16, 19, 20

*Portera v. Winn Dixie of Montgomery, Inc.*, 996 F.Supp. 1418 (M.D. Ala. 1998) .............. passim

*Saville v. Houston County Healthcare Auth.*, 852 F.Supp. 1512 (M.D. Ala. 1994) .................... 18

*Williams v. Russell Corp.*, 218 F. Supp.2d 1283 (M.D. Ala. 2002) .............................................. 8

**Other Authorities**

*Beaver v. Montana Dep't of Natural Res. and Conservation*, 78 P.3d 857 (Mont. 2003) ............ 9

*Big B., Inc. v. Cottingham*, 634 So.2d 999 (Ala. 1993) ............................................................. 16

*Busby v. Truswal Sys. Corp.*, 551 So.2d 322 (Ala. 1989) .......................................................... 17

*Doe v. Swift*, 570 So.2d 1209, n.3 (Ala. 1990) ........................................................................ 20

*Gardner v. State Farm Mut. Auto Inc. Co.*, 842 So.2d 1 (Ala. Civ. App. 2002) ........................ 16

*Jackson v. Ala. Power Co.*, 630 So.2d 439 (Ala. 1993) ............................................................. 17

*Ledbetter v. United Am. Ins. Co.*, 624 So.2d 1371 (Ala. 1993) ....................................... 14, 15, 16

*McIsaac v. WZEW-FM Corp.*, 495 So.2d 649 (Ala. 1986) .......................................................... 19

*Potts v. BE & K*, 604 So.2d 398 (Ala. 1992) ...................................................................... 19, 20

*Sanders v. Shoe Show, Inc.*, 778 So.2d 820 (Ala. Civ. App. 2000) ............................................ 15

*Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041 (Ala. 1993) ...................................... 17

*Turner v. Hayes*, 719 So.2d 1184 (Ala. Civ. App. 1997) *rev'd on other grounds*, 179 So.2d 1190 ................................................................................................................................................... 18

*Zielke v. AmSouth Bank, N.A.*, 703 So.2d 354 (Ala. Civ. App. 1996) ........................................ 15

**Rules**

Fed. R. Civ. P. 36(a) ...................................................................................................................... 7

Fed. R. Civ. Proc. 56 ...................................................................................................................... 1

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ADWOWA JACOBS, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| ELECTRONIC DATA SYSTEMS | § | 2:05-CV-925-MHT-SRW |
| CORPORATION AND JEFF | § | |
| WILLIAMS, | § | |
| Defendants. | § | |

### ELECTRONIC DATA SYSTEMS CORPORATION'S
### MOTION FOR SUMMARY JUDGMENT

Electronic Data Systems Corporation ("EDS"), one of the Defendants in the above-entitled and numbered cause, files this Motion for Summary Judgment as to Plaintiff's causes of action against it and, in support thereof, would respectfully show the Court the following:

## I.    PRELIMINARY STATEMENT

This is an employment case. Adwowa Jacobs ("Plaintiff"), who is currently employed as a Call Center Representative in EDS's Montgomery, Alabama facility, has sued EDS for (1) sexual harassment; (2) negligent hiring, training and supervision; (3) wanton hiring, training and supervision; (4) outrage; and (5) invasion of privacy. As detailed more fully below, Plaintiff's claims fail under Federal Rule of Civil Procedure 56 because there are no genuine issues of material fact concerning the essential elements of Plaintiff's claims.

In particular, it is undisputed that EDS has promulgated a policy specifically prohibiting workplace harassment and provides its employees with harassment training on an annual basis. Once Plaintiff reported the alleged harassment by Jeff Williams, a co-worker who there had been no previous complaints against during his seven (7) years of employment with EDS, an investigation was undertaken and prompt and effective remedial action was taken. Plaintiff has

admitted that following the investigation, she has not been subjected to any sexual harassment by Mr. Williams. Given the undisputed facts, EDS is entitled to judgment as a matter of law on each of Plaintiff's causes of action against it.

## II.    FACTUAL BACKGROUND

EDS is a leader in the global information services industry. (Declaration of Leslie Liebman at ¶3). Plaintiff began her employment with EDS in August 1997 as a Call Center Representative at its facility in Montgomery, Alabama. (Deposition of Adwowa Jacobs [hereinafter "Plaintiff's Dep."] at 19:2-3, 23:10-16; Liebman Decl. at ¶3). In this capacity, Plaintiff supports EDS' account with the United States Department of Education working on a team that performs report research to facilitate the funding of federal government education loans. (Plaintiff's Dep. at 24:2-6, 24:22-25:5; Liebman Decl. at ¶3).

EDS is committed to providing its employees with a work environment free from harassment. (Liebman Decl. at ¶4). In this regard, EDS has promulgated a policy specifically prohibiting workplace harassment and other inappropriate conduct. (Plaintiff's Dep. at 29:16-21; Liebman Decl. at ¶4). EDS' policy prohibiting workplace harassment is included in its Code of Business Conduct, which employees are required to review on an annual basis. (Plaintiff's Dep. at 29:16-30:1, 30:6-31:11; Liebman Decl. at ¶4 and Exhibit 1 attached thereto). In addition, EDS' policies, including its policy relating to harassment, are published on its employee intranet (called the InfoCentre), as well as posted in various locations at its facilities. (Plaintiff's Dep. at 31:12-32:23, 33:14-23; Liebman Decl. at ¶4 and Exhibit 2 attached thereto). Not only was Plaintiff (and all other employees of EDS) provided with access to EDS' policy prohibiting harassment, but Plaintiff (and all other employees) are provided with workplace harassment training on an annual basis. (Plaintiff's Dep. at 34:6-11, 35:2-8; Liebman Decl. at ¶4).

Pursuant to EDS' Sexual Harassment and Other Unlawful Behavior Policy, employees are required to report any incidents of alleged harassment, and the policy provides numerous alternative avenues for employees to report any suspected violations of the policy. (Plaintiff's Dep. at 35:18-37:1; Liebman Decl. at ¶5 and Exhibit 2 attached thereto). The policy further provides that EDS will investigate any complaints of alleged harassment and that employees will not be retaliated against in any way for making a good faith complaint of harassment. (Plaintiff's Dep. at 37:2-7; Liebman Decl. at ¶5 and Exhibit 2 attached thereto).

On February 10, 2005, Plaintiff approached her supervisor, Tara Relf, and reported that a coworker, Jeff Williams, had hugged her and rubbed against her on the elevator returning from lunch. (Plaintiff's Dep. at 76:2-3; Declaration of Tara Relf at ¶2). Shortly thereafter, Plaintiff sent an e-mail to Mr. Williams stating:

> What happened on the elevator, please don't let that happen again. That was very inappropriate and disrespectful. No need to apologize in the future let's just keep things on a business level.

(Plaintiff's Dep. at 76:10-13, 77:18-78:21; Liebman Decl. at ¶7 and Exhibit 3 attached thereto). Mr. Williams responded to Plaintiff's e-mail as follows: "I understand, just joking around with you, no disrespect meant." (Plaintiff's Dep. at 79:8-9, 80:1-12; Liebman Decl. at ¶7 and Exhibit 4 attached thereto).

Although Plaintiff had requested that Ms. Relf simply inform Mr. Williams' supervisor of the alleged incident, Ms. Relf contacted Christine Cornwell, the Human Resources Business Partner responsible for supporting the EDS facility in Montgomery, and forwarded her copies of the e-mails between Plaintiff and Mr. Williams. (Relf Decl. at ¶2). Due to the serious allegations made by Plaintiff, Ms. Cornwell determined that it was necessary to involve EDS' corporate Employee Relations department. (Declaration of Christine Cornwell at ¶2). At that

3

time, Leslie Liebman, an Employee Relations Specialist in EDS' Employee Relations department, was assigned to investigate Plaintiff's allegations. (Liebman Decl. at ¶6).

To initiate the investigation and gain a better understanding of Plaintiff's specific allegations, Ms. Liebman asked Ms. Relf to have Plaintiff provide a written statement as to what she claimed to have occurred on the elevator. (Liebman Decl. at ¶8; Relf Decl. at ¶3). Plaintiff did as requested and provided Ms. Liebman with a written statement on February 23, 2005. (Plaintiff's Dep. at 88:10-16; Liebman Decl. at ¶8 and Exhibit 5 attached thereto). In this written statement, Plaintiff claimed that Mr. Williams had "brushed" her behind, put his arms around her waist, untucked her shirt and rubbed her bare stomach, laid his head on her shoulder, and said "you feel so good."[1] (Plaintiff's Dep. at 88:10-16; Liebman Decl. at ¶8 and Exhibit 5 attached thereto).

After receiving Plaintiff's written statement and confirming that there were no witnesses to the alleged incident, Ms. Liebman interviewed Mr. Williams. (Plaintiff's Dep. at 96:11-97:6; Liebman Decl. at ¶9). During the interview, Mr. Williams described the "elevator incident" as a simple "hug." (Liebman Decl. at ¶9). In addition to interviewing Mr. Williams, Ms. Liebman interviewed other individuals, including female employees who worked with both Mr. Williams and Plaintiff. (*Id.*). Ms. Liebman also reviewed Mr. Williams' personnel file and spoke to his supervisor to ascertain if any previous complaints had been made against Mr. Williams. (*Id.*).

EDS had not previously received any complaints relating to Mr. Williams. (Liebman Decl. at ¶¶ 9, 10). In addition, there were no witnesses to the alleged incident and Mr. Williams'

---

[1] Notably, after contacting an attorney, the description provided later by Plaintiff to the Equal Employment Opportunity Commission ("EEOC"), in her Charge of Discrimination ("Charge") markedly differed from the written statement she originally provided to EDS. (Plaintiff's Dep. at 144:11-17, 145:8-147:14, 242:5-19). For example, in her Charge Plaintiff claimed, for the first time, that Mr. Williams rubbed her breasts and put his hands inside her pants. (Plaintiff's Dep. at 145:19-150:20 and Exhibit 8 attached thereto).

denied Plaintiff's allegations that he engaged in conduct of a sexual nature. (Liebman Decl. at ¶9). Nevertheless, Mr. Williams received a verbal warning for admittedly "hugging" a co-worker. (Liebman Decl. at ¶11 and Exhibit 6 attached thereto). In addition, Mr. Williams was counseled about his interaction with female co-workers, reminded of EDS' policy prohibiting retaliation, and was instructed to not contact Plaintiff. (*Id.*) Finally, Mr. Williams was required to take EDS' online Workplace Harassment training course which he completed on March 15, 2005. (*Id.*) Plaintiff was advised of the results of the investigation—that her allegations of a sexually related touching could not be substantiated as there were no witnesses, but that corrective action had been taken as to the allegations that could be substantiated (*i.e.* that Mr. Williams had hugged Plaintiff). (Plaintiff's Dep. at 96:11-20; Liebman Decl. at ¶11). Plaintiff was also reminded that she should report any future incidents of harassment or retaliation immediately. (Plaintiff's Dep. at 96:11-20, 108-4-11; Liebman Decl. at ¶11).

On June 13, 2005, Plaintiff e-mailed Ms. Liebman stating that "Jeff walks around here still intimidating me following me around and also following me out of the parking lot…and constantly hanging in my area staring at me." (Liebman Decl. at ¶12 and Exhibit 7 attached thereto). Upon receipt of this e-mail from Plaintiff, Ms. Liebman initiated an investigation into Plaintiff's allegations. (Liebman Decl. at ¶12). As part of this investigation, Ms. Liebman attempted to interview Plaintiff; however, Plaintiff refused to agree to keep the investigation confidential while it was being conducted (per EDS' policy), and ultimately refused to answer any questions without her counsel present. (Liebman Decl. at ¶12; Plaintiff's Dep. at 120:11-21, 122:5-8). Nevertheless, Ms. Liebman followed up on Plaintiff's allegations by interviewing Mr. Williams. (Liebman Decl. at ¶12). In addition, Ms. Liebman interviewed co-workers who worked in the same area as Plaintiff to determine if they had observed any of the "intimidating"

conduct as alleged by Plaintiff.  (*Id.*)  Each of the individuals interviewed could not corroborate any of Plaintiff's allegations and, in fact, stated that they had not witnessed any conduct by Mr. Williams that could be considered "intimidating" in nature.  (*Id.*)

Thereafter, Ms. Liebman advised Plaintiff of the results of this investigation—that her allegations could not be substantiated—and reminded Plaintiff that she should report any future incidents of harassment or retaliation immediately.  (Plaintiff's Dep. at 96:11-20, 108:4-11, 110:11-20; Liebman Decl. at ¶13).  In addition, Mr. Williams was, once again, reminded that of EDS' policy prohibiting retaliation and advised that he should stay away from Plaintiff as much as possible at work.  (Liebman Decl. at ¶13).

Since February 10, 2005, Plaintiff has made no additional complaints of sexual harassment by Mr. Williams.  (Liebman Decl. at ¶14; Plaintiff's Dep. at 122:14-29).  Plaintiff has admitted that since reporting the alleged harassment by Mr. Williams in February 2005, he has not sexually harassed her in any way—he has not touched her inappropriately or even spoken to her.  (Plaintiff's Dep. at 101:10-12, 101:17-23, 142:20-143:6).  Plaintiff has also admitted that she has not suffered any adverse employment action since reporting the alleged harassment—she has remained employed by EDS in the same position and earning the same salary.  (Plaintiff's Dep. at 143:18-144:10).  Apparently, Plaintiff's only complaint is that, in her opinion, Mr. Williams did not receive sufficiently severe discipline because EDS did not terminate his employment.  (Plaintiff's Dep. at 155:22-157:13).

## III.  <u>EDS IS ENTITLED TO SUMMARY JUDGMENT ON EACH OF PLAINTIFF'S CAUSE OF ACTION</u>

Pursuant to the Federal Rules of Civil Procedure, summary judgment is mandated:

…after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such

> a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment has the initial burden of informing the Court of the basis for the motion and establishing that there is no genuine issue of material fact.  *Id*. at 323.  Once that burden is met, the non-moving party must "go beyond the pleadings" to identify specific facts which show there is a genuine issue of material fact.  *Id.* at 324.  In meeting this burden, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts—she must demonstrate that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  An action is void of a material issue for trial "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Id.* at 587.

In the pending action, Plaintiff has asserted five (5) causes of action against EDS in her Complaint: sexual harassment; negligent hiring, training and supervision; wanton hiring, training and supervision; outrage; and invasion of privacy.[2]  As set forth more fully herein, Plaintiff cannot establish the essential elements of any of these causes of action and, thus, EDS is entitled to judgment as a matter of law.[3]

---

[2] Plaintiff has admitted that the cause of action for assault and battery set forth in her Complaint is plead against Mr. Williams alone and not EDS.  (Plaintiff's Dep. at 210:1-10).  Consequently, EDS does not address this cause of action in its Motion for Final Summary Judgment.

[3] Not only is EDS entitled to judgment as a matter of law based on the undisputed facts, but EDS is also entitled to summary judgment based upon Plaintiff's deemed admissions.  More specifically, on July 12, 2006, because of Plaintiff's failure to respond to EDS' discovery, including Requests for Admissions, this Court entered an Order holding that "defendant's requests for admissions are deemed admitted by operation of Fed. R. Civ. P. 36(a)" [Docket #17].  Pursuant to these deemed admissions, Plaintiff has admitted that: she had "not been harassed because of [her] gender;" neither EDS nor Mr. Williams had "engaged in extreme and/or outrageous conduct toward [her];" neither EDS nor Mr. Williams caused her "severe emotional distress; "neither EDS' nor Mr. Williams' "actions or inactions constituted a wrongful intrusion into [her] private life and/or activities;" and she had "never been subject to unwelcome sexual harassment during [her] employment with EDS."  (*See* EDS' First Set of Requests for Admissions at Requests Nos. 6, 9, 11, 12 and 15, attached as Exhibit 2 to Jacobs' Decl.).

A.    <u>There Is No Evidence To Support Plaintiff's Sexual Harassment Cause of Action Against EDS</u>.

Plaintiff alleges that she was sexually harassed by Mr. Williams—a non-supervisory co-worker.  (Plaintiff's Dep. at 51:6-11, 54:20-22).  Consequently, in order to establish a *prima facie* case of hostile work environment sexual harassment, she must establish: (1) that she belongs to a protected class; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive working environment; and (5) a basis for holding EDS liable.  *Hulsey v. Pride Rest., L.L.C.*, 367 F.3d 1238, 1244 (11th Cir. 2004); *Williams v. Russell Corp.*, 218 F. Supp.2d 1283, 1292 (M.D. Ala. 2002).  In the pending action, Plaintiff is unable to establish the fourth and fifth elements necessary to establish her *prima facie* case and, thus, EDS is entitled to judgment as a matter of law.

1.    <u>The alleged harassment was not severe or pervasive.</u>

The Supreme Court has made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  In assessing whether the alleged harassment was sufficiently hostile or abusive so as to be "severe or pervasive," the Court should consider: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating; and (4) whether the conduct unreasonably interferes with the employee's job performance.  *Id.* at 787-88; *Miller v. Kenworth of Dothan*, 277 F.3d 1269, 1276 (11th Cir. 2002).  Taking these factors into consideration, and in light of the "totality of the circumstances," it is clear that the allegations of harassment made by Plaintiff, even if true, do not rise to the level necessary to be considered "severe or pervasive."

It is undisputed that Plaintiff's claim of sexual harassment is based solely on the one incident that allegedly occurred on the elevator on February 10, 2005, between Plaintiff and Mr. Williams.  (Plaintiff's Dep. at 54:20-22, 57:1-12).  It is also undisputed that the alleged incident happened during a 45-60 second time period.  (Plaintiff's Dep. at 66:9-18, 255:20-256:9).  While the allegations raised by Plaintiff are serious, this single incident of a sexual advance by a non-supervisory co-worker is not sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create a hostile working environment.  *See, e.g.*, *Faragher*, 524 U.S. at 788 (holding that isolated incidents will generally not be considered so severe or pervasive as to amount to a discriminatory change in the terms and conditions of employment); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1249 (11th Cir. 1999) (finding that alleged following and staring in the context of sniffs, one verbal statement, and one slight touching, fell far short of actionable hostile environment sexual harassment); *Meriweather v. Caraustar Packaging Co.*, 326 F.3d 990, 993 (8th Cir. 2003) (holding the lone grabbing incident and subsequent encounter does not rise to the level of severe or pervasive conduct to alter the conditions of Meriweather's employment and create an abusive working environment); *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000) (observing that "[b]ecause only the employer can change the terms and conditions of employment, an isolated incident of harassment by a co-worker will rarely (if ever) give rise to a reasonable fear that sexual harassment has become a permanent feature of the employment relationship"); *Beaver v. Montana Dep't of Natural Res. and Conservation*, 78 P.3d 857, 867 (Mont. 2003) (upholding district court's conclusion of law that, under the circumstances, the single incident of sexual assault did not create a hostile and abusive working environment actionable under Title VII).

2.    <u>There is no basis to hold EDS liable for the alleged harassment.</u>

Even if the alleged harassment was severe or pervasive, which EDS denies, where the alleged harassment was perpetrated by a co-employee and not a supervisor, EDS can only be held liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action.  *Miller*, 277 F.3d at 1278; *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000).  Insofar as it is undisputed that Mr. Williams was merely a co-worker of Plaintiff, Plaintiff must show either actual knowledge on the part of EDS or conduct sufficiently severe or pervasive as to constitute constructive knowledge by EDS.  In the pending action, there is simply no evidence of actual or constructive knowledge of Mr. Williams' alleged harassment prior to Plaintiff's complaint.   Furthermore, the undisputed evidence establishes that upon receiving Plaintiff's complaint, EDS took prompt and effective remedial action in response to the complaint.  Therefore, EDS is entitled to judgment as a matter of law.

a.    <u>Prior to February 10, 2005, EDS did not have actual or constructive notice of any alleged harassment by Mr. Williams.</u>

In order for Plaintiff to prevail, she must establish that EDS had actual or constructive notice of the harassment prior to February 10, 2005.  *Miller*, 277 F.3d at 1278.  Actual notice is established by proof that EDS knew of the harassment; whereas constructive notice could be found if the alleged harassment was so severe and pervasive that EDS should have known of it. *Id.*  As previously established, prior to February 10, 2005, when Plaintiff first reported the alleged incident in the elevator, EDS had no actual or constructive notice of any alleged harassment by Mr. Williams.  (Liebman Decl. at ¶10).

In the seven (7) years Mr. Williams had been employed by EDS, it had received no complaints regarding his conduct—much less complaints that he had engaged in any conduct

that could be considered to be sexually harassing in nature.[4]  (Liebman Decl. at ¶10).  Even

Plaintiff has admitted that she has no evidence that Mr. Williams had previously engaged in such

conduct of which EDS would be aware.[5]  (Plaintiff's Dep. at 69:8-11).  Furthermore, as is its

routine practice, EDS conducted a thorough background check of Mr. Williams prior to offering

him employment.  (Liebman Decl. at ¶10).  EDS did not obtain any information as part of its

background check of Mr. Williams which would have put it on notice that he may engage in

sexual harassment.  (*Id.*).  Consequently, there is no evidence that EDS had actual or constructive

notice of Mr. Williams' alleged harassment prior to February 10, 2005.

> **b.**    Once Plaintiff reported the alleged harassment, EDS
> took prompt and effective remedial action.

Once Plaintiff complained of the alleged harassment, EDS took prompt and effective

remedial action.  Specifically, an investigation was immediately undertaken by EDS' Employee

Relations department which consisted of interviewing and obtaining statements from both

Plaintiff and Mr. Williams.  (Liebman Decl. at ¶¶6, 7, 8, 9).  In addition, Ms. Liebman reviewed

Mr. Williams' personnel file and spoke to his supervisor to determine if there had been any

---

[4]  It is undisputed that EDS has promulgated an effective and comprehensive anti-harassment policy that is aggressively and thoroughly disseminated to its employees.  *Miller*, 277 F.3d at 1279.  More specifically, EDS has promulgated its anti-harassment policy in both its Code of Business Conduct (which employees are annually required to review), as well as in its on-line policies (which are available to employees through the EDS InfoCentre).  (Plaintiff's Dep. at 29:16-30:1, 30:6-32:23; Liebman Decl. at ¶¶ 4, 5 and Exhibits 1 and 2 attached thereto).  In addition, employees are annually required to participate in on-line harassment training.  (Plaintiff's Dep. at 34:6-11, 35:2-4; Liebman Decl. at ¶4).  Prior to February 10, 2005, neither Plaintiff nor any other employee had utilized EDS' anti-harassment grievance procedures to complain about Mr. Williams.  (Plaintiff's Dep. at 57:1-12, 69:8-11; Liebman Decl. at ¶¶ 9, 10).  Therefore, there is no evidence of actual or constructive notice to EDS.

[5]  Plaintiff alleges that, prior to February 10, 2005, Mr. Williams had made a comment that she considered to be offensive in nature.  (Plaintiff's Dep. at 57:1-59:8).  Plaintiff contends that she "reported" this comment to Brenda Cheatham, a non-supervisory co-worker, but did not report it to anyone else at EDS.  (Plaintiff's Dep. at 59:13-20).  Even if Ms. Cheatham was a "team lead" as alleged by Plaintiff, which EDS denies, her reporting of the alleged comment was insufficient to put EDS on actual or constructive notice.  For example, in *Miller* the Eleventh Circuit noted that merely showing a supervising manager a sexually suggestive note, did not adequately apprise the manager of "the dimensions of the problem or even that there was a problem that required his attention." *Miller*, 277 F.3d at 1278 (citing *Coates v. Sundor Brands, Inc.*, 164 F.3d 1361, 1365 (11th Cir. 1999)).  Consequently, the fact that Plaintiff may have advised a co-worker that Mr. Williams had made an offensive comment prior to February 10, 2005, does not constitute notice for which liability can be imposed on EDS.  *Id.*

previous complaints that he had engaged in any inappropriate conduct. (Liebman Decl. at ¶9). Ms. Liebman's investigation uncovered no previous complaints that had been made against Mr. Williams. (Liebman Decl. at ¶¶9, 10).

Because there were no witnesses to the alleged incident between Plaintiff and Mr. Williams on the elevator, and Plaintiff's and Mr. Williams' version of what had occurred differed dramatically, EDS was unable to substantiate Plaintiff's allegations. (Liebman Decl. at ¶11). Furthermore, EDS had not previously received any complaints relating to Mr. Williams. Nevertheless, Mr. Williams received a verbal warning for admittedly "hugging" a co-worker. (Liebman Decl. at ¶11 and Exhibit 6 attached thereto). In addition, Mr. Williams was counseled about his interaction with female co-workers, reminded of EDS' policy prohibiting retaliation, and was instructed to not contact Plaintiff. (*Id*). Finally, Mr. Williams was required to take EDS' online Workplace Harassment training course which he completed on March 15, 2005. (*Id.*) Plaintiff was advised of the results of the investigation—that her allegations of a sexually related touching could not be substantiated as there were no witnesses, but that corrective action had been taken as to the allegations that could be substantiated (*i.e.*, that Mr. Williams had hugged Plaintiff). (Plaintiff's Dep. at 96:11-20, 108:4-11; Liebman Decl. at ¶11). Plaintiff was also reminded that she should report any future incidents of harassment or retaliation immediately. (Plaintiff's Dep. at 96:11-20, 108:4-11; Liebman Decl. at ¶11).

To be considered remedial, the action taken by EDS must simply be reasonably likely to prevent the misconduct from recurring in the future. *Kilgore v. Thompson & Brock Mgm't, Inc.*, 93 F.3d 752, 754 (11th Cir. 1997). In the pending action, it is undisputed that, to date, Plaintiff has made no additional complaints of sexual harassment by Mr. Williams. (Plaintiff's Dep. at 122:14-19; Liebman Decl. at ¶14). Furthermore, Plaintiff has admitted that since February 10,

2005, Mr. Williams has not touched or even spoken to her.  (Plaintiff's Dep. at 101:10-12, 101:17-23, 142:20-143:6).  EDS' actions, therefore, constitute prompt and effective remedial action as a matter of law.  *See, e.g.*, *Farley v. Am. Cast Iron. Pipe Co.*, 115 F.3d 1548, 1555 (11th Cir. 1997) (finding that the employer took prompt remedial action by initiating an investigation and disciplining the alleged harasser); *Portera v. Winn Dixie of Montgomery, Inc.*, 996 F.Supp. 1418, 1427-28 (M.D. Ala. 1998) (holding that the employer took prompt remedial action by initiating an investigation, verbally counseling the alleged harasser and requiring him to undergo additional sexual harassment training).

Plaintiff apparently contends that the remedial action taken by EDS was insufficient because Mr. Williams was not terminated from employment.  (Plaintiff's Dep. at 155:22-157:13).  As recognized by the court in *Portera,* the mere fact that Mr. Williams was not terminated does not indicate that there was a lack of prompt remedial action—especially given that the evidence establishes that he was reprimanded and the objectionable conduct has not recurred.  *Portera*, 996 F.Supp. at 1427; *see also Goodstein v. Gunther Motor Co.*, 1996 WL 903950 at *11 (S.D. Fla. 1996) (finding that the plaintiff's contention that the remedial actions were insufficient because the employer did not discipline the harassing employee were baseless given that after she complained the employee never touched her again and stopped making inappropriate remarks).

> Merely because the Plaintiff may feel that other punishment may have been appropriate does not mean that the employer's remedial actions were inadequate. It is not the role of this court to determine if an offending employee was disciplined in a manner which the Plaintiff feels was appropriate, but to determine whether remedial efforts were adequate.

*Portera*, 996 F.Supp. at 1428; *see also Knabe v. Boury Corp.*, 114 F.3d 407, 414 (3rd Cir. 1997) (stating that "punitive action against the harassing employee, *e.g.,* reprimand, suspension or

dismissal, is not necessary to insulate the employer from liability…[s]o long as the remedy is reasonably calculated to prevent future instances of harassment"); *Goodstein*, 1996 WL 903950 at *11 (noting that "it is not enough for the plaintiff merely to point out ways in which she thinks the remedial actions could have been better or to point to how the remedial expectations did not meet her expectations").

The undisputed evidence establishes that EDS promptly investigated Plaintiff's complaint and took prompt and effective remedial action that did, in fact, prevent any future sexual harassment of Plaintiff by Mr. Williams. Cosequently, EDS is entitled to judgment as a matter of law on Plaintiff's claim of sexual harassment.

B.    There Is No Evidence That EDS Was Negligent In Hiring, Training Or Supervising Mr. Williams.

In order to establish a claim against EDS for negligent hiring, training or supervision, Plaintiff must show that the Mr. Williams' alleged propensity to harass was actually known to EDS or was discoverable by EDS if it had exercised care and proper diligence. *Portera*, 996 F.Supp. at 1438; *Ledbetter v. United Am. Ins. Co.*, 624 So.2d 1371, 1373 (Ala. 1993). As set forth more fully herein, there is no evidence to support a finding that EDS was negligent in hiring, training or supervising Mr. Williams and, thus, EDS is entitled to judgment as a matter of law.

1.    There is no evidence to support a finding of negligent hiring.

Plaintiff alleges, without any evidentiary support, that EDS was negligent in hiring Mr. Williams alleging that it failed to conduct a thorough background check. (Plaintiff's Dep. at 153:21-154:14). Despite Plaintiff's allegations to the contrary, there is simply no evidence which would allow a reasonable finder of fact to conclude that EDS knew or could have known that Mr. Williams would engage in sexual harassment before EDS hired him. More specifically,

the undisputed evidence establishes that as is its routine practice, EDS conducted a background check on Mr. Williams prior to offering him employment. (Liebman Decl. at ¶10). This background check included a criminal history check. (*Id.*) As a result of this background check, EDS obtained no information which would put it on notice that he may engage in sexual harassment. (*Id.*) Furthermore, Plaintiff has presented no admissible evidence that a more thorough background check of Mr. Williams would have revealed any different result. Consequently, EDS cannot be held liable for negligent hiring. *Portera*, 996 F.Supp. at 1438.

Moreover, a critical element of Plaintiff's claim, which she cannot meet given the facts of this case, is that EDS actually knew or should have known that Mr. Williams would act improperly. *Sanders v. Shoe Show, Inc.*, 778 So.2d 820, 824 (Ala. Civ. App. 2000). Furthermore, Plaintiff has no evidence to support an inference that Mr. Williams had a history of improper conduct similar to the conduct alleged by Plaintiff. *Id.* (affirming summary judgment on Plaintiff's negligent or wanton hiring and supervision claim because Plaintiff had no proof that defendant should have known that its employee was likely to be abusive to patrons).

    2.    There is no evidence to support a claim of negligent training or supervision.

With respect to her claim for negligent training and supervision, Plaintiff does not appear to draw a distinction. *See, e.g., Zielke v. AmSouth Bank, N.A.*, 703 So.2d 354, 358 n.1 (Ala. Civ. App. 1996) (noting there is not an identifiable difference between claims of negligent training and supervision). To recover against an employer under a theory of negligent training or supervision, Plaintiff must first show "by affirmative proof that the alleged incompetence of [Mr. Williams] was actually known to [EDS] or was discoverable by [EDS] had it exercised care and proper diligence." *Portera*, 996 F.Supp. at 1438 (citing *Ledbetter v. United Am. Ins. Co.*, 624 So.2d 1371, 1373 (Ala. 1993)).

15

As was the case in *Portera*, it appears that Plaintiff is attempting to argue that EDS was negligent for not properly training Mr. Williams with respect to its sexual harassment policy. (Plaintiff's Dep. at 155:3-12, 157:14-20, 172:1-20). Even if true, however, such alleged failure is insufficient to hold EDS liable for negligent training or supervision. More specifically, the only way EDS can be held liable is if it knew or should have known by due diligence of Mr. Williams' alleged propensity to engage in sexual misconduct. *Portera*, 996 F.Supp. at 1438; *Ledbetter*, 624 So.2d at 1373. As previously established, there is simply no evidence to support such a finding of this case. (*See* Section IV.B.1 *supra*).

C.    There Is No Evidence That EDS Was Wanton In Hiring, Training Or Supervising Mr. Williams.

Plaintiff's claim for wanton hiring, training or supervision is based on the same facts as her claim for negligent hiring, training or supervision. (Plaintiff's Dep. at 172:21-173:20). With respect to this cause of action, however, in addition to proving that EDS knew or should have know of Mr. Williams' alleged propensity to engage in sexual misconduct, Plaintiff's wanton-supervision claim has as an additional requirement that Plaintiff demonstrate EDS acted with reckless indifference. *Gardner v. State Farm Mut. Auto Inc. Co.*, 842 So.2d 1, 10-11 (Ala. Civ. App. 2002). Consequently, to recover on her claim for wanton—as opposed to negligent—hiring, training or supervision, in addition to requiring proof that EDS knew or should have known that Mr. Williams had the propensity to engage in sexual misconduct, Plaintiff must also show some degree of consciousness on the part of EDS that injury was likely to result from its act or omission. *Mills v. Wex-Tex Indust., Inc.,* 991 F.Supp. 1370, 1390 (M.D. Ala. 1997) (citing *Big B., Inc. v. Cottingham*, 634 So.2d 999, 1004 (Ala. 1993), *abrogated on other grounds by* ALA. CODE 1975, §6-11-23(a)); *Gardner*, 842 So.2d at 10 (holding that the plaintiff must demonstrate that the employer has wantonly disregarded its agent's incompetence so that it acted

16

or omitted to act with reckless indifference to the consequences…being aware from its knowledge of existing circumstances and conditions that its conduct would probably result in injury to another).

Given that the undisputed facts in this case do not even give rise to a cause of action for negligent hiring, training or supervision, they clearly are not sufficient to support a claim for wanton hiring, training or supervision. Consequently, EDS is entitled to judgment as a matter of law.

> D.    There Is No Evidence To Support Plaintiff's Outrage Cause of Action.

The tort of outrageous conduct only applies in the most egregious circumstances. *Kilgore v. Thompson & Brock Mgm't*, 93 F.3d 752, 754 (11th Cir. 1997); *Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala. 1993); *Busby v. Truswal Sys. Corp.*, 551 So.2d 322, 328 (Ala. 1989). To recover under the tort of outrageous conduct, Plaintiff must prove: (1) EDS either intended to inflict emotional distress or knew or should have known that emotional distress was likely to result from its conduct; (2) EDS' conduct was extreme and outrageous; and (3) EDS' conduct caused Plaintiff emotional distress so severe that no reasonable person could be expected to endure it. *Portera*, 996 F.Supp. at 1434 (citing *Jackson v. Ala. Power Co.*, 630 So.2d 439, 440 (Ala. 1993)). In other words, the conduct complained of must be "so outrageous in character and extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Kilgore*, 93 F.3d at 754; *Portera*, 630 So.2d at 440. In the pending action, the conduct complained of by Plaintiff simply does not constitute extreme or outrageous conduct.

More specifically, Plaintiff complains of one incident that purportedly occurred during a 45 to 60 second time period on an elevator between herself and a co-worker. (Plaintiff's Dep. at 54:20-22, 57:1-12, 66:9-18, 255:20-256:9). Although the conduct complained of by Plaintiff is serious in nature, it does not rise to the level of outrageous conduct. *Portera*, 996 F.Supp. at 1435 (holding that comments and inappropriate touching by supervisor—including placing his hand inside the employee's blouse—was not the type of sexual harassment which constitutes outrageous conduct); *Saville v. Houston County Healthcare Auth.*, 852 F.Supp. 1512, 1541 (M.D. Ala. 1994) (granting summary judgment on outrageous conduct claim where incidents included poking a female employee in the rib cage and grabbing the employee's buttocks); *Turner v. Hayes*, 719 So.2d 1184, 1187 (Ala. Civ. App. 1997) *rev'd on other grounds*, 179 So.2d 1190 (concluding that incidents of touching, including poking female employees under their armpits near their breasts, putting hands on a female employee's waist, rubbing against an employee as the harasser passed through a door, and touching the female employee on the leg, combined with comments and attempts to look up the employee's skirt, did not establish outrageous conduct).

Even if such conduct by Mr. Williams constitutes outrageous conduct, which EDS denies, there is no evidence that EDS engaged in extreme or outrageous conduct. As previously established EDS has promulgated an effective anti-harassment policy to its employees and requires all employees to undergo annual harassment training. (Plaintiff's Dep. at 29:6-32:23, 34:6-11, 35:2-8; Liebman Decl. at ¶¶4, 5). Furthermore, after Plaintiff reported her complaint, EDS took prompt, and effective remedial action to prevent the misconduct from recurring in the future. (Liebman Decl. at ¶11). Plaintiff herself has admitted that Mr. Williams has not spoken to her or touched her since her complaint on February 10, 2005. (Plaintiff's Dep. at 101:10-12,

101:17-23, 122:14-19, 142:20-143:6).  Finally, any alleged "intimidation" that Plaintiff contends

occurred after February 10, 2005, does not rise to the level of extreme conduct necessary to hold

EDS liable for the tort of outrage.  *Mills*, 991 F.Supp. at 1386-87.

     E.     <u>There Is No Evidence To Support Plaintiff's Cause of Action For Invasion of Privacy.</u>

With respect to her cause of action for invasion of privacy, Plaintiff is proceeding under

the "intrusion upon seclusion" theory.  (*See* Plaintiff's Complaint at ¶ 33).  Plaintiff, however,

cannot prevail on this cause of action against EDS insofar as: (1) the conduct complained of by

Plaintiff does not constitute an invasion of privacy; and (2) there is no evidence to support

holding EDS liable for the alleged actions of Mr. Williams.

As previously noted, although the conduct complained of by Plaintiff is serious in nature,

it does not support a claim of invasion of privacy.  *Portera*, 996 F.Supp. at 1436 (holding that the

conduct complained of—including a supervisor's placing his hand inside the employee's

blouse—did not constitute an invasion of privacy); *McIsaac v. WZEW-FM Corp*., 495 So.2d 649,

651-652 (Ala. 1986) (finding insufficient evidence to support a claim of invasion of privacy

where the president of the company told a female employee about an affair he had had, asked the

employee to have dinner and to be available when he was in town, tried to kiss the employee,

engaged in lurks and innuendoes, touched the employee's arm and tried to have her fired).

Furthermore, even if Mr. Williams' conduct could be considered an invasion of privacy,

EDS cannot be held liable for it.  More specifically, an employer can only be held indirectly

liable for acts of its employees where the acts were done in the line and scope of employment, in

the furtherance of the employer's interests or that the employer participated in, authorized or

ratified the wrongful acts.  *Portera*, 996 F.Supp. at 1436; *Potts v. BE & K*, 604 So.2d 398, 400

(Ala. 1992).  As recognized by the Alabama Supreme Court, an assault and battery by an

employee is purely personal and outside the course and scope of his employment. *Portera*, 996 F.Supp. at 1437 (citing *Doe v. Swift*, 570 So.2d 1209, 1211-12 & n.3 (Ala. 1990)); *see also Mills*, 991 F.Supp. at 1382-83. Consequently, even if Plaintiff's allegations are true, Mr. Williams was not acting within the course and scope of his employment or in the furtherance of his employment so as to subject EDS to liability for his alleged conduct. *Id.*

Because it is clear that, if Plaintiff's allegations are true, Mr. Williams was not acting within the course and scope of his employment when he allegedly harassed Plaintiff, EDS can only be held liable if Plaintiff can establish that EDS had knowledge of the tortious conduct, that based on this knowledge, EDS knew or should have known that the conduct constituted sexual harassment and failed to take adequate steps to remedy the situation. *Portera*, 996 F.Supp. at 1436; *Potts*, 604 So.2d at 400. As previously established, there is no evidence that EDS had any knowledge of Mr. Williams alleged tortious conduct prior to February 10, 2005. Furthermore, the evidence establishes that as soon as EDS became aware of the alleged conduct, it took prompt remedial action. Consequently, EDS cannot be held liable for invasion of privacy. *Portera*, 996 F.Supp. at 1436.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff is unable to raise a genuine issue of material fact as to any of her claims against EDS. Accordingly, EDS respectfully requests that this Court enter an order granting this Motion for Final Summary Judgment against Plaintiff, Adwowa Jacobs, dismiss all of the claims asserted against it in this matter with prejudice, and grant EDS all other relief at law or in equity to which it shows itself to be justly entitled.

Respectfully submitted,


**Baker & Hostetler LLP**


By:   s/Tonya A. Jacobs
        Tonya A. Jacobs
        State Bar No. 00790954
        Fed. ID No. 18459
        Rachel M. Smith
        State Bar No. 24046483
        Fed. ID No. 570875
        1000 Louisiana, Suite 2000
        Houston, Texas 77002-5009
        Telephone:  (713) 751-1600
        Telecopier:  (713) 751-1717


**Burr & Forman LLP**


        Ashley H. Hattaway (HAT007)
        Wachovia Tower
        420 North Twentieth Street, Ste. 3100
        Birmingham, Alabama 35203
        Telephone:  (205) 458-5135
        Telecopier:  (205) 458-5100


Attorneys for Defendant
Electronic Data Systems Corporation

## CERTIFICATE OF SERVICE

    I hereby certify that on the 30th day of October, 2006 I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of the filing to the following:

        L. D. Walker, III
        The Walker Law Firm
        8650 Minnie Brown Road, Suite 160
        Montgomery, Alabama 36117


           /s/
        Tonya A. Jacobs

i