IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **ADWOWA JACOBS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 2:05-CV-925-MHT-SRW** |
| | ) | |
| **ELECTRONIC DATA SYSTEMS** | ) | |
| **CORP., and JEFF WILLIAMS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT JEFF WILLIAMS'S MEMORANDUM BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**COMES NOW** the Defendant, **JEFF WILLIAMS**, and submits this Memorandum Brief in support of his concurrently filed Motion for Summary Judgment, stating as follows:

## STATEMENT OF FACTS

Williams hereby adopts and incorporates, as if separately set forth herein, all facts set forth in Defendant Electronic Data Systems Corp.'s ("EDS") memorandum brief in support of its motion for summary judgement. Williams adds the following additional facts in support of his motion.

The alleged ***single, isolated*** incident of sexual harassment occurred on or about February 10, 2005. Prior to the alleged incident Plaintiff had been employed by EDS as a customer service representative for approximately eight (8) years, since August 1997, at its Montgomery Student Loan Service Center. (Exhibit A, Deposition of Adwowa Jacobs at 19:2-4, 23:10-16). Both Plaintiff and Williams worked on the same floor of EDS's office. (Exhibit A at 27:1-9).

Plaintiff testified that before the alleged incident in February 2005, Williams had never committed any acts of sexual harassment against her.

Q.     Prior to the incident in February of '05 that you claimed occurred on the elevator -

-

A.     Uh-huh (affirmative response).

Q.     - - do you believe you've been sexually harassed - -

A.     No.

Q.     - - at any point before that?

A.     No.

(Exhibit A at 57:2-12).[1]

On February 10, 2005, an incident between the Plaintiff and Williams happened on an

elevator at the offices of EDS.  At 1:52 p.m., Plaintiff sent an inter-office e-mail to Williams

which stated:

Jeff,

What just happened in the elevator please don't let that happen again.  That was
very inappropriate and disrespectful.  No need to apologize in the future let's just
keep things on a business level.

AJ

(Exhibit B).

Williams responded to Plaintiff's e-mail, stating: "I understand, just joking around with

---

[1]  Plaintiff later recalled an incident in January 2005, where Williams "made her very
uncomfortable." (Exhibit A at 58:17 to 59:6).  According to Plaintiff, when she was in the break
room getting coffee, she commented that a co-employee may have gotten up on the wrong side of
bed, to which Williams replied: "[O]h, I thought you wanted me to get up on the side of the bed
with you." (Id. at 58:8 to 59:5).  Plaintiff claims she just looked at Williams, walked off and
never reported it to a supervisor. (Id. at 59:5-18).  Other than this incident in January, Plaintiff
testified that Williams never said anything that she considered offensive or touched her before
the February 2005 event underlying her Complaint. (Id. at 61:6-14, 69:8 to70:4).

2

you, no disrespect meant." (Exhibit C).  According to Williams, all he did on the elevator was

hug the Plaintiff. (Exhibit A at 94:11-16).

Plaintiff reported the alleged incident to a co-worker, Twana Anthony, and then to Tara

Relf, Plaintiff's supervisor. (Exhibit A at 72:21 to 73:2; 75:22 to 76:3).  Thirteen (13) days later,

Plaintiff typed her own statement of the incident at the request of Leslie Liebman, an EDS

personnel supervisor assigned to investigate the matter. (Exhibit A at 86:20 to 87:5).  According

to Plaintiff, she was instructed by Liebman to tell "exactly what happened." (Exhibit A at 90:1-

3).  Plaintiff's self-prepared statement states in part:

> 2/23/2005
>
> Leslie Liebman
>
> On February 10th, 2005 around 1:45 p.m. I was returning from lunch.  As I
> approached the double doors in the basement headed to the elevator Jeff Williams
> also was walking closely behind.  I felt something brush my behind - I assumed
> that Jeff accidentally brush [sic.] against me or was walking too close.  We
> walked onto the elevator [sic.] once the elevator door closed Jeff took his arms
> around my waist and pulled me closer to him (he was standing on my right side)
> [sic.]  I tried to nudge him away.  He pressed his body against mines [sic.] which
> forced me on the wall of the elevator.  I said hey get off of me [sic.] he said that he
> was cold and he wanted me to warm him up.  He proceeded to take my blouse out
> of my pants and began to rub on my stomach (bare stomach) and said he want
> [sic.] me to warm him up.  I said get off of me and he laid his head on my
> shoulder while he was holding me [sic.] he said I felt so good.  Shortly after that
> the elevator doors open [sic.] and we were on the 6th floor.  He walked off made
> [sic.] a reference to he had [sic.] to go exchange some jeans he bought on his
> lunch break.  I asked him where he exchanged the jeans.  He said Looking Good
> or Weil's [sic.] I can't remember which one he said.  I walked to my desk just
> flabbergasted.
> . . . .

(Exhibit D).

Plaintiff testified that when she prepared the statement, she tried to be truthful and

include everything that she could remember.

      A.      I wrote this statement.  She requested that day for this statement.

      . . .

      Q.      Okay.  And you wrote it?

      A.      Yes.

      Q.      Was [sic.] the events still fresh in your mind?

      A.      Yes.

      Q.      You tried to be truthful?

      A.      I tried to put as much detail like as I can remember.

      Q.      So everything you could remember you put in this statement?

      A.      Yes.

(Exhibit A at 90:11 to 91:8).

Sometime, between February 10 and March 8, 2005, Plaintiff hired her current lawyer.

(Exhibit A at 145:22 to 147:14).  On March 8, 2005, Plaintiff filed a charge against EDS with the

Equal Employment Opportunity Commission ("EEOC") regarding the alleged incident in the

elevator. (Exhibit E).  Plaintiff's EEOC charge is similar to the self-prepared statement she gave

EDS, but contained two new assertions omitted from her previous statement.  In her EEOC

charge Plaintiff for the first time claimed that when Williams hugged her he "began rubbing my

breasts and then he began putting his hand in my pants." (Exhibit E).[2]

---

    [2]  According to Plaintiff's deposition testimony, Williams was standing at her right side and began hugging her with his left arm around her waist. (Exhibit A at 257:4-22, 260:1-6). Williams then took his right hand, put it in her pants and pulled out her blouse. (Id. at 258:20 to 259:12, 260:15-17).  Williams then rubbed her belly, stating that he needed her to warm him up. (Id. at 259:12-14).  In the process, he touched the "bra area of her breast." (Id. at 261:13-16).  At

Plaintiff readily admits that her statement to EDS differs from her statement to the EEOC. (Exhibit A at 147:11-14). Her excuse for not mentioning that Williams allegedly rubbed the bra area of her breast and put his hand down her pants, is: "I just neglected to put it in there." (Id. at 149:10 to 151:4). Plaintiff also is unsure that she told anyone at EDS that Williams allegedly rubbed her breast or put his hand down her pants. At most, she **may** have told two co-employees and Liebman. (Exhibit A at 151:12 to 152:13). In the memorandum brief and affidavit exhibits filed in support of its motion for summary judgment, EDS denies that Plaintiff informed it or its agents that Williams had allegedly rubbed her breasts and put his hands down her pants.

Notwithstanding, this much is known. The entire incident happened in 45 to 60 seconds. (Exhibit A at 66:9-18, 256:5-9). Williams claims that the contact consisted of a hug. (Id. at 94:13-16). Plaintiff testified that during the incident, Williams complained that he was cold and wanted Plaintiff to warm him up. (Id. at 68:19-22, Exhibit D). Immediately following the incident, Williams apologized via e-mail and tried to speak to Plaintiff in person. (Exhibit A at 79:8 to 81:17). Thereafter, Williams never touched or spoke to Plaintiff again.

Q.    But you said since February of '05 he's never tried to speak to you?

A.    No.

Q.    And he's never touched you?

A.    No.

Q.    Has he ever called you at home?

---

that point the elevator stopped and Williams released her. (Exhibit A at 261:17-21). Plaintiff's deposition testimony differs, however, from the chronology contained in her EEOC charge, which alleged Williams put his hand down her pants after pulling out her blouse and rubbing her stomach.

A.    No.

(Exhibit A at 142:20 to 143:6; see also 101:10-23).[3]

## ARGUMENT

I.    **WILLIAMS IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW BECAUSE, BASED ON THE UNDISPUTED FACTS, PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST HIM FOR WHICH RELIEF CAN BE GRANTED.**

_____To the extent applicable, Williams hereby adopts the legal arguments contained in EDS's memorandum brief in support of its motion for summary judgment, as if separately set forth herein.  As discussed in EDS's  memorandum brief, Plaintiff's Complaint contains six (6) counts, but only four (4) are directed at Defendant Williams - sexual harassment under Title VII of the Civil Rights Act of 1964 (Count I); outrage (Count II); assault and battery (Count V); and invasion of privacy (Count VI).  The remaining two counts for negligent hiring, training and supervision, and wanton hiring, training and supervision, cannot be directed at this Defendant. As set forth herein, Defendant Williams is entitled to a summary judgment on each and every count against him because, based on the undisputed facts, Plaintiff has failed to state a claim for

---

[3]  Although Plaintiff admits that Williams never spoke to her or tried to contact her again, she nonetheless claims that he subsequently intimidated her by walking by her work area to go to the restrooms or water fountain, and visiting with Annie Kent, who also worked in the same area. (Exhibit A at 102:1 to 103:13, 105:1-18, 136:10 to 137:3).  Plaintiff also claims that Williams followed her in the parking lot at work. (Exhibit A at 137:4 to 139:14, 142:1-13).  Finally, she claims that someone came to her house over a period of several months, and knocked on her window in the early morning hours. (Exhibit A at 40:9 to 42:17).  However, Plaintiff admits that Williams ceased visiting her work area as often when Kent left EDS. (Exhibit A at 135:1-10). Plaintiff also admits that Williams was sometimes parked near her in the parking lot when they worked the same shift but that Williams never tried to follow her home. (Exhibit A at 139:1-14). Plaintiff also testified that she does not know who came to her house and that, after reporting the matter to the police, nothing ever developed. (Exhibit A at 42:6-20).

which relief can be granted and Williams is entitled to summary judgment as a matter of law.

> ### A.    As A Co-Worker, Williams Cannot Be Individually Liable for Sexual Harassment Under Title VII.

Count I of Plaintiff's Complaint for sexual harassment under Title VII of the Civil Rights Act of 1964 can be summarily addressed and dismissed.  It is well established in this federal circuit that an employee cannot be individually liable for a Title VII claim.  Portera v. Winn Dixie of Montgomery, Inc., 996 F. Supp. 1418, 1426 (M.D. Ala. 1998) ("[T]he Eleventh Circuit does not recognize claims against individuals under Title VII"); Mills v. Wex-Tex Industries, Inc., 991 F. Supp. 1370, 1379 (M.D. Ala. 1997) ("As a matter of law, individuals cannot be held personally liable under Title VII."); Saville v. Houston County Healthcare Authority, 852 F. Supp. 1512, 1522 (M.D. Ala. 1994) ("42 U.S.C.A. § 2000e(b)  . . . does not impose individual liability but only holds the employer accountable for the acts of its individual agents.").

In addition, it is undisputed that Williams is a non-supervisory co-employee of the Plaintiff.  Williams is not Plaintiff's supervisor and has never been Plaintiff's supervisor. (Exhibit A at 51).  In fact, Plaintiff does not know if Williams has ever had any supervisory authority. (Id. at 53).  Plaintiff's supervisor is Tara Relf. (Exhibit A at 28).  Relf's supervisor is Scott Arnt, and Jarvis Robinson is in charge of the entire office. (Id. at 50).

Title VII has long be construed to exclude claims for sexual harassment by non-supervisory co-employees.  See Karstens v. International Gamco, Inc., 939 F. Supp. 1430, 1438 (D. Neb. 1996) ("[A] nonsupervisory co-employee cannot be held individually liable under Title VII."); Cook v. Applied Data Research, Inc., CIV. No. 88-2894 (CSF), 1989 WL 85068 at *12 (D.N.J. July 20, 1989) ("Margerum cannot be characterized as a supervisory employer [sic.] with

regard to plaintiff, and the Title VII claims against him must be dismissed."); <u>Flowers v. Rego</u>, 691 F. Supp. 177, 179 (E.D. Ark. 1988) ("Because it is undisputed that Rego held no supervisory, managerial or other position of authority with defendant . . . the court finds that he can not be held liable under Title VII"); <u>see</u> <u>also</u> <u>Smith v. Rust Engineering Co.</u>, No. C.A. 78-M-0479, 1978 WL 126 at *2   (N.D. Ala. October 25, 1978) (holding that there could be no liability for alleged harassment by non-supervisory employee because there was "no nexus between the alleged statements and any term or condition of the plaintiff's employment.").

Accordingly, as a matter of law Plaintiff cannot establish a Title VII claim against Williams, individually, who is no more than a co-employee with no supervisory authority whatsoever over her.  Therefore, Plaintiff's sexual harassment claim against him must be dismissed with prejudice.

### B.    Based on the Undisputed Facts, Williams Cannot Be Liable for the Tort of Outrage.

The Alabama Supreme Court has defined the tort of outrage as conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and . . . be regarded as atrocious and utterly intolerable in a civilized society." <u>McIsaac v. WZEW-FM Corp.</u>, 495 So. 2d 649, 651 (Ala. 1986).  Specifically, to recover for tort of outrage Plaintiff must prove that Williams: (1) intended to inflict emotional distress, or knew or should have known emotional distress was likely to result from his conduct; (2) Williams's conduct was extreme and outrageous; and (3) Williams's conduct caused emotional distress so severe that no reasonable person could be expected to endure it. <u>Portera</u>, 996 F. Supp. at 1434.

It is undisputed that there were no witnesses to the events that transpired in the elevator

between Plaintiff and Williams. (Exhibit A at 66:2-4, 96:11 to 97:6). The Plaintiff claims after the fact that Williams sexually assaulted her on this one, isolated occasion. Williams denies Plaintiff's allegations, asserting only that he hugged her. However, the best evidence for purposes of summary judgment are Plaintiff's un-controverted contemporaneous or near contemporaneous admissions made on the day of the incident. According to Plaintiff, the earliest the incident happened was at 1:41 pm on February 10, when Plaintiff was returning from lunch. (Exhibit A at 65:3-6). The incident transpired on the elevator for 45 to 60 seconds (Exhibit A at 66:11-18, 256:5-9), or sometime between 1:41 and 1:42 or 1:43. Just ten minutes or less afterwards, at 1:52 p.m., Plaintiff initiated contact with Williams by sending him an e-mail where she stated that he had acted "very inappropriate and disrespectful," but that there was "[n]o need to apologize in the future." (Exhibit B). Plaintiff admits that minutes later Williams apologized via e-mail, claiming he was "just joking" and "no disrespect meant," and tried to talk to her in person. (Exhibit A at 79:8 to 81:17; Exhibit C). Plaintiff also admits that while on the elevator, following the alleged incident, she conversed with Williams as if nothing had happened:

> Q.    Now, you said that when he was getting off y'all continued to have a conversation about what he had done over lunch?
>
> A.    Actually, he was - - was - - you hear the bing of the elevator - -
>
> Q.    Uh-huh (affirmative response).
>
> A.    - - he - - he let go. He released me.
>
> Q.    Okay. And then what happended?
>
> A.    And he was like wow, I had a good lunch. I had a great lunch. And - - he made some statement he had to return some items to - - some jeans he just purchased. ***And I was like for real. I said where.*** And he said - - made a statement Weil's or Looking Good. . .

Q.    So you didn't get off the elevator yelling and screaming?

A.    No.

Q.    And you actually asked him where he had to return his jeans?

A.    Yes.

(Exhibit A 71:16 to 72:20; see also Exhibit A at 63:20 to 64:4; Exhibit D) (emphasis added).  In addition to these facts, when asked to write a detailed incident of what happened, Plaintiff typed a report where she admittedly "neglected" to include the allegations that Williams put his hand down her pants and rubbed her breast. (Exhibit A at 151:3-4).  Finally, Plaintiff has never known of anyone to allege that Williams engaged in offensive behavior and, besides the one alleged incident, has never known Williams to engage in offensive behavior. (Exhibit A at 61:6-14, 69:8 to 70:4).

Based on the undisputed evidence made contemporaneous with the alleged incident, Plaintiff has failed to present substantial evidence to satisfy her burden of proof.  In particular, there is no evidence whatsoever that Williams intended to inflict emotional distress or knew or should have known he would inflict severe emotional distress.  Even Plaintiff concedes that Williams responded to her e-mail by stating that he was joking and that no disrespect was meant. (Exhibit A at 79:8-13).  It is also undisputed that following this isolated incident, Williams never had any further contact or communication with Plaintiff. (Exhibit A at 101:2-23, 142:20 to 143:6).

In addition, as referenced in note 2 to EDS's motion for summary judgment, by order of the Court dated July 12, 2006, Plaintiff was deemed to have admitted to EDS's requests for admissions, pursuant to Fed. R. Civ. P. 36(a) ("If the court determines that an answer does not

10

comply with the requirements of this rule, it may order either that the mater is admitted or that an

amended answer be served.").  The requests for admission deemed admitted include the

following related to Defendants Williams:

> REQUEST FOR ADMISSION NO. 7: Admit that you have not suffered
> substantial detrimental effect on your employment or you psychological well-
> being, as a result of any conduct of Defendants.
>
> REQUEST FOR ADMISSION NO. 8: Admit that you have not been treated for or
> diagnosed with severe emotional distress, mental anguish, anxiety, stress,
> humiliation, inconvenience, and/or loss of enjoyment of life.
>
> REQUEST FOR ADMISSION NO. 9: Admit that neither EDS nor Williams
> engaged in extreme and/or outrageous conduct toward you.
>
> REQUEST FOR ADMISSION NO. 11: Admit that neither EDS nor Williams
> intentionally and/or reckless caused you severe emotional distress.
>
> REQUEST FOR ADMISSION NO. 12: Admit that neither EDS's nor Williams'
> actions or inactions constituted wrongful intrusion into you private life and/or
> activities.
>
> REQUEST FOR ADMISSION NO. 15: Admit that you have never been subject
> to unwelcome sexual harassment during your employment with EDS.

(Exhibit F).

Based on the evidence and her admissions, Plaintiff has also failed to prove that

Williams's conduct was so outrageous in character and so extreme as to go beyond all possible

bounds of decency.  Within minutes of the incident, Plaintiff merely described it as very

inappropriate and disrespectful but that there was "[n]o need to apologize in the future." (Exhibit

B).  Obviously, conduct where there is no need to apologize cannot, as a matter of law, be

"atrocious and utterly intolerable in a civilized society."

For the same reasons, Williams's alleged conduct could not cause emotional distress so

severe that no reasonable person could be expected to endure it.[4]  The undisputed evidence is that

the event in the elevator was an isolated incident and was, to use Plaintiff's own words,

inappropriate and disrespectful.  However, according to the Alabama Supreme Court, the tort of

outrage does not extend to "mere insults, indignities, threats [or] annoyances." McIssac, 495 So.

_____

[4]  Notwithstanding her admissions, Plaintiff testified that she suffered emotional distress and physical injuries.  Plaintiff's alleged emotional distress of anxiety, paranoia, panic attacks, humiliation and deprivation of sleep have a subjective component that is difficult to disprove on a motion for summary judgment.  However, Plaintiff's physical injuries are another matter.  Plaintiff claims she injured her shoulder resisting Williams's hug. (Exhibit A at 182:3-15).  In 2005, Plaintiff saw a neurologist, Dr. Paul Miller, for her alleged injuries. (Exhibit A at 186:2-13).  Dr. Miller's medical records of the Plaintiff do not reference Plaintiff's alleged injury until February 2006, over one year after the fact. (Exhibit G).  In Dr. Miller's entry for February 28, 2006, he makes the following peculiar entry:

> Ms. Jacobs returns today.  I did not remember this, but in February 2005 she was injured.  She was assaulted on the elevator at work.  One of her coworkers put his hands all over her and even down her shirt under her bra.  She fought him off, and then the door opened.  He said, "I had a good lunch", and calmly walked out.  She reported him, and apparently has had some repercussions from work.

> The pain in her neck has been off and on since that time.

(Exhibit H).

Ironically, Dr. Miller's entry for Plaintiff's visit immediately preceding her February 2006 visit, states as follows:

> **Totally normal.  This is a beautiful MRI of the cervical spine.**  The discs are well hydrated.  No spinal stenosis or neural foraminal stenosis.  The cervical spine cord is normal.  No spinal stenosis or disc herniation.  **This could go in a textbook, and I don't see any reason she is having this severe right arm pain.**

> **I did EMG studies on her, and they were normal as well.  Her pain is greatly out of proportion to what I would expect.  Why she has not responded to steriods and Valium, I do not know. . . . I see nothing wrong objectively from a neurological standpoint, and the MRI of her neck is just perfect.**

(Exhibit I, January 31, 2006 Entry).

2d at 651.

Finally, even assuming true all of the Plaintiff's self-serving allegations made much after the fact, Williams would still be entitled to summary judgment. A single, isolated incident of alleged harassment described by Plaintiff cannot, as a matter of law, support a tort of outrage claim. See Portera, 996 F. Supp. at 1435 (holding repeated activities of hugging, making offensive comments and inappropriate touching did not state claim for tort of outrage); Saville, 852 F. Supp. at 1541 (granting summary judgment on tort of outrage claim for defendant accused of discussing his sex life with plaintiff, asking for a "shot of leg" and threatening to "bang whoever was bending over," grabbing plaintiff in the rib cage from behind, and grabbing plaintiff's buttocks or thigh).

Accordingly, as a matter of law Plaintiff cannot state a claim for tort of outrage against Williams, and Plaintiff's claim against him should be dismissed.

## C.    *Based on the Undisputed Facts, Williams Cannot Be Liable for Invasion of Privacy.*

For the same reasons given above, Williams cannot be liable for the tort of invasion of privacy. Under Alabama law the tort of invasion of privacy is defined as the "intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." Butler v. Town of Argo, 871 So. 2d 1, 12 (Ala. 2003). As this Court observed in Portera, in determining whether a plaintiff stated a claim for invasion of privacy, courts have generally focused on whether there was "extreme and outrageous sexual harassment" over a prolonged period of time. 996 F. Supp. at 1435-36 (discussing Brassfield v. Jack McLendon Furniture, Inc., 953 F. Supp. 1438 (M.D.

13

Ala. 1996), <u>Busby v. Truswal Systems Corp.</u>, 551 So. 2d 322 (Ala. 1989) and <u>McIsaac v. WZEW-FM Corp.</u>, 495 So. 2d 649 (Ala. 1986)).  In <u>Portera</u>, the Court held that the plaintiff's allegations that her supervisor had committed two incidents of offensive touching (including placing his hand down plaintiff's blouse), some non-consensual hugs, two sporadic comments of an arguably sexual nature, and a daily comment of an arguably sexual nature, did not rise to the level of personal intrusion to survive a motion for summary judgment. 996 F. Supp. at 1432-33, 1436.

In this case there was one isolated incident of alleged harassment, which at most lasted only 45 to 60 seconds, and consisted primarily of an alleged non-consensual hug and the alleged rubbing of Plaintiff's stomach accompanied by words that Williams was cold.  When the elevator doors opened, Plaintiff did not yell or scream but carried on a conversation with Williams as if nothing had happened.  Within minutes of the incident Plaintiff, herself, initiated contact with Williams, telling him that there was no need for him to apologize.  Williams replied by telling the Plaintiff that he was joking and no disrespect was intended.  Based upon these facts, and also based on Plaintiff's admissions, Plaintiff has failed to establish that Williams engaged in "extreme and outrageous sexual harassment" as a matter of law, and Plaintiff's invasion of privacy claim against him should be dismissed.

### D.    *Plaintiff's Assault and Battery Claim Should be Dismissed as a Matter of Law.*

The elements for assault and battery under Alabama law are as follows: (1) an intentional touching of the plaintiff by the defendant, (2) made in a harmful or offensive manner. <u>Harper v. Winston County</u>, 892 So. 2d 346, 353 (Ala. 2004).  Quoting a 1913 opinion, the Alabama Supreme Court stated in <u>Harper v. Winston County</u>:

14

"A successful assault becomes a battery.  A battery consists in an injury actually done to the person of another in an angry or revengeful or rude or insolent manner, as by spitting in the face, or in any way touching him in anger, or violently jostling him out of the way, or in doing any intentional violence to the person of another.  ***The wrong here consists, not in the touching, so much as in the manner or spirit in which it is done, and the question of bodily pain is important only as affecting damages.  Thus, to lay hands on another in a hostile manner is a battery, although no damage follows;*** but to touch another, merely to attract his attention, is no battery and not unlawful."

892 So. 2d at 353-54 (emphasis in original) (quoting <u>Singer Sewing Machine Co. v. Methvin</u>,

184 Ala. 554, 561, 63 So. 997, 1000 (1913)).

Williams should be granted summary judgment as a matter of law, and Plaintiff's assault and battery claim against him should be dismissed.  The Plaintiff has failed to present substantial evidence that Williams intended to touch her in a "harmful or offensive manner."  Williams has at all times maintained that his touching of the Plaintiff consisted only of a hug. (Exhibit A at 94:13-16).  Almost contemporaneous with the event, Williams informed Plaintiff that he was only joking around and that "no disrespect [was] meant." (Exhibit C).  For her part, within minutes of the incident and before Williams ever explained his intent, Plaintiff initiated contact with the him, advising: "No need to apologize in the future let's just keep things on a business level." (Exhibit B).  It is undisputed that since the day of the alleged incident, Williams has not attempted to have any verbal or physical contact with the Plaintiff. (Exhibit A at 142:20 to 143:6).

Neither Plaintiff's e-mail to Williams, nor Williams's response thereto, evidence any intent by Williams to touch Plaintiff in a "angry, revengeful, rude or insolent manner," or to do intentional violence to the Plaintiff.  At most they evidence a non-consensual and undesired hug.  However, simply touching someone is not unlawful.  Finally, the event giving rise to Plaintiff's

sexual harassment claim is the same event supporting Plaintiff's assault and battery claim.

However, Plaintiff is deemed to have admitted to the following request for admission:

> REQUEST FOR ADMISSION NO. 15: Admit that you have never been subject to unwelcome sexual harassment during your employment with EDS.

Based on this admission and the facts set forth here, Plaintiff has failed to state a claim for assault and battery and her claims against Williams must be dismissed as a matter of law.

## CONCLUSION

For the reasons set forth herein, Defendant Jeff Williams is entitled to summary judgment as a matter of law. Plaintiff cannot state a Title VII claim against Williams for which relief can be granted because Title VII does not impose individual or direct liability on a non-supervisory employee for alleged sexual harassment. In addition, as a matter of law Plaintiff has failed to present substantial evidence that Williams's alleged conduct supports a claim for tort of outrage, invasion of privacy, or assault and battery. Accordingly, judgment should be entered in Williams's favor and Plaintiff's claims against him should be dismissed with prejudice, in their entirety, as a matter of law.

Respectfully submitted this the 31st day of October, 2006.

> /s/ J. Flynn Mozingo
> JAMES E. WILLIAMS (ASB-9283-W84J)
> J. FLYNN MOZINGO (ASB-9111-O73J)
> Melton, Espy & Williams, PC
> 255 Dexter Avenue
> Post Office Drawer 5130
> Montgomery, AL 36103-5130
> Telephone: (334) 263-6621
> Facsimile: (334) 263-7252
> jwilliams@mewlegal.com
> fmozingo@mewlegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following on this the 31st day of October, 2006:

*Counsel for Plaintiff:*              *Counsel for Electronic Data Systems Corporation:*
L.D. Walker, III                      Ashley H. Hattaway
Suite 150                             Wachovia Tower
8650 Minnie Brown Road                420 North Twentieth Street, Suite 3100
Montgomery, AL 36117                  Birmingham, AL 35203
(334) 215-4513                        (205) 458-5135
deewalker@parkplacecenter.com         ahattawa@burr.com

                                      Tonya A. Jacobs
                                      Baker Hostetler
                                      1000 Louisiana
                                      Suite 2000
                                      Houston, TX 77002-5009
                                      tjacobs@bakerlaw.com

                                              /s/ J. Flynn Mozingo
                                              Of Counsel

17