

PLAINTIFF'S EXHIBIT A

### 3Response to Admission

1. I did incur medical expenses
2. I was treated
3. Yes I have
4. I did sign a contract when I was first hired
5. I am currently employed
6. I have been harassed because of my gender
7. I suffered tremendously because of the incident
8. I have been treated for emotional distress, mental anguish, anxiety, stress, humiliation, inconvenience, and the loss of enjoyment of life
9. EDS and Jeff both engaged in extreme conduct towards me
10. Yes it occurred
11. Yes they recklessly caused sever emotional distress
12. Yes they did
13. Yes they did
14. Yes they did
15. Yes I have
16. yes I did
17. No I have not

### Interrogatories and Request for Production

**Request for production NO 1:**
    Response: Dee Walker has

**Request for production NO 2:**
    Response N/A

Interrogatory No 1 Kelly's Temp Service (Temp) PO Box 331179 Detroit, Mi 48266-0051
(a)Air Force Quality Institute, Maxwell AFB, Montgomery, Alabama (b) Audio-Visual Technician (c) $ 25,000 plus GS-7 POSITION (d) 11/96 to 3/97 (e) The job was a temporary until they relocated to Texas

**Request for production NO 3:**
    Response: included attachment

**Request for production NO 4:**
    Response N/A

**Request for production NO 5:**
    Response: Dee Walker

**Request for production NO 6**
    Response: Dee Walker

**Request for production NO 7:**
    Response: Dee Walker

**Request for production NO 8:**

           Response: Dee Walker
Request for production NO 9:
           Response Dee Walker atty Dr. Smith psychiatrist
Request for production NO 10:
           Response: Dee Walker
Interrogatory NO 2: Laura McNeil made a statement in January 2006 when I had an ice pack and heat pad on my shoulders and back. She asked what was wrong and I told her I have been having problems for several months now. I've been hurting almost a year now. She stated that I shouldn't have put up a fight and I should have let him (referring to Jeff) do what he wanted. I looked shocked because I knew I never talked with her about this incident.
Request for production NO 11:
           Response:  On 3/16/05 Leslie Liedman of Human Resource for EDS called me at 8:35 a.m. central time. She asked me was it safe to talk. I informed her I was at my desk. She asked me could I go to an isolated area in which we could talk and call her at the number given. I asked Brenda Cheatham to walk with me to the 6th floor conference room because I was afraid to alone because fear of running into Jeff Williams. Brenda and I entered the 6th floor conference room and I called Leslie back. Leslie stated to me that she reviews my allegation and she did not find substantial support to conclude that anything happened in the elevator with Jeff. I asked her what did she mean. She stated that according to Jeff Williams that the only thing that took place in the elevator was that he gave me a hug. By that time I was shaken and Brenda console me to calm me down. I told Leslie that he did not just give me a hug he grabbed me and pulled my blouse out of my pants and began to place his hands down my pants and up my blouse rubbing on my stomach and breast and that he was all over me. Leslie stated that since there was no witness that it's hard to prove my case. I stated to Leslie where in any sexual attacks that there are witness. I also told Leslie that I would I be taken medicine for pain, anxiety, pain, and can not sleep at night.  I told her that I hear noise on the outside of my bedroom window at night. I told her that I have sought counseling to try and help me work through this Leslie asked me did I contact EAP employee assistance program. I told her yes. She stated good and asked me was I aware of the other programs that's offered (FMLA). She also stated to take time off to get myself together. I became very upset because of Leslie tone as if she was pacifying me. I was so upset Brenda and I walked back to our area and I told Tara my supervisor of the conversation and asked her will it be okay that I leave. She said yes I gathered my things and Tara walked me to my automobile and I told Tara about Leslie and I conversation. Tara made the comment that she spoken to Leslie and Tara stated that she told Leslie that I was very upset about whatever happened in the elevator with Jeff. Tara stated she told Leslie that I was crying and really nervous every time Jeff came around me or when I saw him. Tara state by Leslie tone that she knew Human Resource or anyone would do anything about it. I told Leslie that the admission of an apology that Jeff made in email should have been admission to him doing something inappropriate. Leslie stated that maybe he was apologizing for given me a hug. I stated it must have been an unwanted hug and I wouldn't have

been this upset over a simple hug. She also said she knew he wasn't going to admit guilt.
Request for production NO 12:
    Response:
Request for production NO 13:
    Response: attorney has
Request for production NO 14:
    Response: attorney has
Interrogatory NO 4: Thawania Anthony 2/11/05 when the incident first happened she saw how disturb I was coming back from lunch. She asked what was wrong. We walked to the break room with my blouse still outside my pants and I told her what happened. She told me that I should report it and report it immediately. I then came back and informed Tara Relf my supervisor what happen to me on the elevator. I told Brenda Cheatham and Debra Atkins that same day. Debra made a comment as to that what I needed some one need to man handle me and take some of that web off of my "cat"
Interrogatory NO 4: Jarvis Robinson on 6/13/05 after a conversation in Jarvis office about what Brenda Cheatham and I did on 6/10/05 (clean out the refrigerator) and we threw all the food out according to the rules for Friday clean up break room. I walked back to my desk and came back to Jarvis office later on to comment that they can make a federal case over a $.65 lunch being thrown away but no one has contacted me on being assaulted in the elevator by Jeff Williams has not been address yet. Jarvis stated to me that she thought that was taken care of. I stated to her "you thought" you're the Operational Manager and you do not know what's going on in your center. She then stated that she do not what's going on with the case she just assume that it was taken care of. I then stated that being the Manager of the center she could at least checked to see if I was okay then I asked can she check with HR about the progression of the case. She then stated that she doesn't know what's going on then asked me what happened then I detailed it to her again. She acted as if this was her first time hearing about it; in which I know that Tara told her. I then told her that a CSR told me that it was said that the reason why nothing has been done is because it was said that HR was told by Management that I was crazy and paranoid. Jarvis asked me where did I get that info from. I stated it's not important because Jeff feels free to walk in my area and stand that for anywhere from 15 to 20 minutes at a time talking to Annie Kent. I told her that I was still seeing a therapist at least twice a month because Jeff does things to intimidate me by staring at me from the water fountain that is not far from me. I told her in the 8yrs I've worked here I never seen anyone drink out of that fountain because it looks contaminated; and that food and stuff are floating in the drainage. I told here that Jeff just stood there staring at me---I squatted in my chair to avoid eye contact. I also told Jarvis that he walks past my area at the minimum of 25 times a day. I told Jarvis that many time I noticed Jeff sitting in his car in the parking lot and soon as I get in my car he pulls out behind me. At one time I saw Jeff leaving the same time I did so I came back to my desk and waited for about 5 to 10 min to ensure he left the area---once I got outside he was still out there, rush to his car, and when I got in the car he pulls out behind me leaving the parking lot.

**Request for production NO 15:**
    **Response: attorney has**
**Request for production NO 16:**
    **Response: attorney has**
**Request for production NO 16:**
    **Response: attorney has**
**Request for production NO 17:**
    **Response : attorney has**
**Request for production NO 18:**
    **Response : attorney has**
**Request for production NO 19:**
    **Response : attorney has**
**Request for production NO 20:**
    **Response: attorney has**
**Request for production NO 21:**
    **Response: attorney has**
**Request for production NO 22:**
    **Response: attorney has**
**Request for production NO 23:**
    **Response: attorney has**
**Request for production NO 24:**
    **Response: attorney has**
**Request for production NO 25:**
    **Response: EDS has them on file**
**Request for production NO 26:**
    **Response: N/A**
**Request for production NO 27**
    **Response attorney has**
**Request for production NO 28**
    **Response: attorney has**
**Request for production NO 29:**
    **Response: attorney has**
**Request for production NO 30:**
    **Response: attorney has**
**Request for production NO 31:**
    **Response: attorney has**
**Request for production NO 32:**
    **Response: attorney has**
**Request for production NO 33:**
    **Response: attorney has**
**Request for production NO 34:**
    **Response : attorney has**
**Request for production NO 35:**
    **Response: attorney has**
**Request for production NO 36:**
    **Response: attorney has**

Request for production NO 37:
    Response : attorney has
Request for production NO 38
    Response : See above
Request for production NO 39:
    Response : attorney has
Request for production NO 40:
    Response attorney has
Request for production NO 41:
    Response : attorney has
Interrogatory NO 11: attorney has
Request for production NO 42:
    Response : see above
Request for production NO 43:
    Response: attorney has
Request for production NO 44:
    Response: attorney has
Request for production NO 45:
    Response: attorney has
Interrogatory NO 16:  Medical bills included
Request for production NO 46:
    Response: Medical bill included
Request for production NO 47:
    Response: attorney has
Request for production NO 48:
    Response: attorney has
Request for production NO 49:
    Response: attorney has
Request for production NO 50:
    Response: attorney has
Request for production NO 51:
    Response: attorney has
Request for production NO 52
    Response: attorney has
Request for production NO 53:
    Response: attorney has
Request for production NO 54:
    Response: attorney has
Request for production NO 55:
    Response: attorney has
Request for production NO 56:
    Response: attorney has
Request for production NO 57:
    Response: attorney has
Request for production NO 58:
    Response: attorney has

Request for production NO 59:
    Response: attorney has
Request for production NO 60:
    Response: Included in file
Interrogatory No 21 Brenda Cheatham
Request for production NO 61:
    Response: N/A
Request for production NO 62:
    Response: On EDS file also some included
Request for production NO 63:
    Response: attorney has
Request for production NO 64:
    Response: attorney has
Request for production NO 65:
    Response: N/A


Brenda Cheatham stated to me in 01/06 can not remember the exact date. She stated that Jarvis called her in her office (Jarvis's) and asked her several questions about me. She stated that she had her in her office for over two hours trying to get her to say negative things about me. Brenda stated that she did not say anything about me. Brenda also stated that Jarvis kept getting her to say things and was feeding her information to get her to admit to me doing some things. Brenda told me that she told Jarvis that she do not want to be apart of anything….she SAID that she told Jarvis that AJ comes in do her work and leave.

On 12/12/05 before I left for Vacation my computer crashed and it took them six hours to get it up and running. On the next day 12/13/05 I was going through my email. In the Archive folder that suppose to deletes every 60 days had email from 2002 – 2004---it was well over two thousands old email that I knew I had not viewed or received. I scanned through several and they were explicit things, and sexual provocative stuff. I told Tara and asked how could that stuff populate on my computer…she stated that she didn't know. I made the comment that it's mighty strange that on yesterday my computer crashed and today all of this is on there. I cleared it and check my archive folder daily.

I think I sent you the stuff from 12/15/05 stating undeliverable---if not it's included into the package. I wasn't there on that day. Also, I sent you something that was sent from a Centrobe email address around the same time and that's an email address we hadn't used in five years. On 12/23/05 I was off and came to work to get something off of my desk the tech temp---Greg James was at my desk. When I returned that Monday I checked my system and emails stated that I sent stuff out on 12/23/05 when I was not there.